# IN THE UNITED STATES DISTRICT COURT FILED
## FOR THE DISTRICT OF NEW MEXICO

05 APR 15 PM 1: 42

CLERK-ALBUQUERQUE

CROWNPOINT INSTITUTE OF TECHNOLOGY,
INC., a tribal organization of the Navajo Nation,

      Plaintiff,

vs.                             No. CIV 04-0531 JP/DJS

GALE A. NORTON, Secretary of the Interior,
et al.,

      Defendants.

## PLAINTIFF'S REQUESTED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Crownpoint Institute of Technology ("CIT") by and through its attorneys

respectfully requests the Court to adopt the following Findings of Fact and Conclusions of Law.

### JURISDICTIONAL AND BACKGROUND FACTS

1.      CIT, located in Crownpoint, Navajo Nation, New Mexico, is a non-profit incorporated

         organization wholly owned and controlled by the Navajo Nation which is a federally

         recognized Indian tribe.

2.      CIT is an entity of tribal government and is a tribal organization chartered to perform

         post-secondary education programs including vocational education and college academic

         programs to qualified persons, primarily Navajo Indians, including on-the-job training,

         and to conduct other socially beneficial programs to promote health care, adult education,

         and social welfare.

3.      Plaintiff is sanctioned by the Navajo Nation to contract under the Indian Self-

         Determination And Education Assistance Act, Public Law 93-638, as amended, 25

73

U.S.C. 450 *et seq.* (The "Act") for programs, functions, services, and activities of the Secretary of the Interior and Department of the Interior for the benefit of Indians because of their status as Indians. Plaintiff CIT's charter and articles of incorporation are enacted per Navajo Council resolution as tribal law and set forth in title 15 of the Navajo Nation Code (NNC), sections 1201-1209. The charter gives CIT broad authority to secure funds from public sources and this authority has been understood by the Navajo Nation to include contracting under P.L. 93-638.

4.   Defendant Gale A. Norton is the Secretary of the Interior and is charged by law with responsibility for carrying out the Act. As such, she is specifically charged with entering into self-determination contracts on behalf of the United States which is the contracting party in every self-determination contract. The other defendants are the Assistant Secretary of the Interior for Indian Affairs and the Regional Director of the Navajo Regional Office of the Bureau of Indian Affairs ( the "BIA") of the Department of the Interior. The latter two individuals are sued in their official capacities and are subordinates of Secretary Norton. Defendant officials of the BIA are obligated to follow the procedures set forth in the Handbook for Non-Construction Contracting under the Act.

5.   The Secretary has awarded P.L. 93-638 contracts in situations where the contracted program had not previously been operated by the Secretary. In particular, such contracts have been awarded to Alamo Navajo School Board, Inc., in central New Mexico to operate an elementary and high school where the BIA had not operated one before (1979). In the early 1980's, the Secretary of Health and Human Services awarded Alamo a P.L.

93-638 contract to operate a full service health clinic where none had been in existence. In 1970, the BIA funded the operation of a tribally-run high school by the Ramah Navajo School Board, Inc, in western New Mexico through a Buy Indian Act contract. That contract was converted to a P.L. 93-638 contract in 1975 upon enactment of the Indian Self-Determination Act. Between 1970 and 1975 the BIA also extended the Ramah contract to include grades K through 12. The Ramah Navajo School Board, Inc. was additionally awarded P.L. 93-638 contracts by the BIA to operate a radio station, an elementary school, a middle school, an adult/continuing education program, and a family literacy program – none of which were in existence or operated by the Secretary for the Ramah Navajo Chapter prior to the contracts with Ramah Navajo School Board, Inc. Ramah was also awarded a P.L. 93-638 contract by the Indian Health Service to operate a full service clinic where none had been operated before. Neither Alamo nor Ramah were awarded these P.L. 93-638 contracts by means of any special legislation other than the Indian Self-Determination Act itself.

## FACTS LEADING TO THE CONTRACTING APPLICATIONS

6.    The monies appropriated to the BIA under the title "Specific Programs and Pooled Overhead" are distinct from those under the title "Tribal Priority Allocations" ("TPA"). Congress has appropriated monies for CIT through the special programs and pooled overhead category since FY 2000.

7.    In 1994, CIT first applied for a contract from the BIA under the Act. The application was not rejected formally and was declared not to contain any declination issues. A contract

was not awarded. Instead, the amount of $60,000 without contract support costs was awarded through a grant for 1995.

8.  Funding from the BIA for CIT's adult vocational training program ceased after the one-year grant for 1995. BIA did not seek funding for CIT during the years 1996 through 2000. During that period CIT mounted efforts seeking Congressional assistance for its funding.

9.  In FY 2000, Congress, at the instance of Senator Domenici, added on $250,000 to the President's Budget Justifications (i.e., budget request) for operation of Indian programs. No mention of CIT had been made in the President's Budget Justifications to Congress. The accompanying Senate Report 106-99, at 52, indicated that CIT was one of only two tribal institutions eligible to receive funding as a tribally controlled adult vocational institution and the other, United Tribes Technical College located in Bismarck, North Dakota, had received appropriated funds from the Bureau for several years while CIT had been excluded from funding. Pursuant to the Committee report the BIA awarded $249,000 to CIT from the FY 2000 appropriation through a grant.

10. In FY 2001, the BIA through the President's Budget Justifications asked Congress for $1,500,000 for CIT in its Special Programs and Pooled Overhead budget category. Congress responded with an appropriation of about $900,000. The funds were awarded by BIA to CIT through a grant carrying no contract support costs.

11. In FY 2002, the BIA, though listing CIT in its Budget Justifications in the Special Programs and Pooled Overhead category, asked for zero monies for CIT. Congress nevertheless added $1,200,000 to the request and in committee reports earmarked the

monies for CIT's program. BIA awarded the monies to CIT through a grant carrying no contract support costs.

12.   In FY 2003, the BIA again failed to ask Congress for monies for CIT, although as in the previous two years, it listed CIT in its Special Programs and Pooled Overhead category. This time Congress not only added $1,200,000 to the President's Budget Justifications but included language in its conference report, page H1062[1], that Congress intended this money to be awarded to CIT in the form of a P.L. 93-638 contract with obligatory contract support costs added in order to conform treatment of CIT with UTTC, which had a P.L. 93-638 contract and received contract support costs accordingly.

## HISTORY OF THE CONTRACTING APPLICATIONS

13.   Prior to submission of the contract applications for FY 2003 and FY 2004 monies, CIT had asked the BIA to follow Congressional directives in the conference report accompanying the FY 2003 appropriation to convert its grants to contracts and award full contract support costs. Instead the BIA delivered a letter to CIT dated August 25, 2003, proposing to award yet another grant for adult vocational training for the period September 1, 2003 through August 31, 2004. The August 25, 2003 letter said that if CIT did not sign the grant agreement "funding [from the FY 2003 appropriation] will be lost and we must withdraw the offer of financial assistance award." Because CIT had to have the money for operations and had no other reasonable choice, under the duress of that

---

[1]         "The managers do not understand the disparate treatment of Crownpoint Institute of Technology and the United Sioux Tribes Technical College related to contract support. Unless there is an objection by the Navajo Nation to Crownpoint being treated as a tribal organization, the managers expect the Bureau to provide this funding under a P.L. 93-638 contract and include contract support."

ultimatum, in October 2003, CIT submitted a grant application [of a new and complicated type not previously required]. That application resulted in a grant agreement signed by CIT's President, James Tutt, on January 5, 2004, after the P.L. 93-638 contract applications at issue were submitted (December 9, 2003) to the Regional Director. The grant agreement cited the Indian Adult Vocational Training Act, 25 U.S.C. § 309, as authority for the grant and did not include contract support costs.

14. Although CIT complied with the dictate of August 25, 2003, by submitting the grant application, it pursued its goal of obtaining a contract instead of a grant by asking the BIA Regional Office on December 4, 2003, for technical assistance to help it contract under P.L. 93-638 . This request was ignored by the BIA.

15. A meeting had been arranged for December 9, 2003 between the Regional Office and CIT to discuss the grant application. On that date CIT hand delivered directly to Regional Director Chicharello two P.L. 93-638 contract applications for the FY 2003 monies (not yet granted) and FY 2004 monies, which had just been appropriated by Congress once again through an add-on to the President's Budget Justifications in which CIT is described under Special Programs and Pooled Overhead with a zero budget request. The amount of the FY 2004 appropriation for CIT was $1,308,000.

16. The contract application submitted December 9, 2003, was in two parts:

    (a)    For conversion of the yet-to-be-awarded grant using appropriated fiscal year 2003 monies covering fiscal year 2003 into a P.L. 93-638 contract with commensurate full funding of contract support costs to be used in FY 2004, the appropriation carrying a two-year authorization for expenditure.

      (b)    For a P.L. 93-638 contract with commensurate contract support costs for

fiscal year 2004 appropriated monies to be used partially in FY 2004 and

the remainder in FY 2005, following the pattern that had been established

for its grants starting in FY 2000.

17.    The December 9, 2003, applications for P.L. 93-638 contracts for FY 2003 and FY 2004

monies substantially complied with the requirements of 25 C.F.R. 900.8.

18.    Upon the December 9, 2003, submission by CIT of its applications for self-determination

contracts, the defendants:

      (a)    Failed to notify plaintiff of receipt within two days;

      (b)    Failed to notify CIT within 15 days of any missing items or deficiencies;

      (c)    Did not notify CIT within 90 days that the applications were declined;

      (d)    Did not route the applications to the proper self-determination contracting

officials within the Regional Office;

      (e)    Did not provide requested technical assistance;

      (f)    And having not provided a declination notice within the statutory and

regulatory deadline, 25 U.S.C. 450f(a)(2) and 25 C.F.R, 900.16, failed to

award the contracts and to add to the contracts funds for contract support

costs.

19.    On January 13, 2004, the Regional Director sent back the applications without action.

There is no regulation permitting the BIA or the Regional Office to return a P.L. 93-638

contract application with no action.

20.    On January 30, 2004, CIT returned the original contract applications to the Regional
        Director with a cover letter stating that the Regional Director had acted contrary to the
        regulations and must consider the applications. The returned  applications were received
        by the BIA on February 3, 2004.

21.    On February 20, 2004, the Regional Office sent a notice of deficiencies to CIT regarding
        its returned applications. This notice was fifty-eight (58) days after the deadline for
        sending such a notice (25 C.F.R. 900.15) and was beyond the deadline even from
        counting February 3, 2004.

22.    CIT responded to the notice of deficiencies on March 29, 2004, but received no
        acknowledgment in reply to that response from the Regional Director or anyone else in
        her office.

23.    This lawsuit was filed on May 13, 2004.

24.    On May 27, 2004, seventy-nine days beyond the 90-day deadline set by 25 C.F.R. 900.16,
        Regional Director Chicharello sent a notice of declination to CIT concerning the
        December 9, 2003, contract applications. The notice did not contain specific findings that
        clearly demonstrated that a declination issue existed and was not supported by reference
        to controlling legal authority that such an issue existed. The notice did not offer technical
        assistance per  25 C.F.R. 900.30 to cure any declination issue.

25.    The BIA Regional Office failed to reply to CIT's requests for technical assistance of
        December 4, 2003, renewed December 9, 2003. CIT considered later communications
        from the Regional Office concerning assistance to be hollow efforts to protect the
        Regional Office and therefore acted reasonably in not pursuing those belated overtures.

Had timely technical assistance been extended, the long delay in confirming tribal authorization from the Navajo Nation's Intergovernmental Relations Committee which was obtained in the form of a Resolution IGRN-203-04, on November 1, 2004, could have been avoided.

26.   The defendants have failed and refused to perform non-discretionary, ministerial duties to award and fund the contracts mandated by Congress, though CIT has demanded such action of defendants.

## POST DECLINATION EVENTS

27.   In August or September 2004, the BIA Regional Office assigned a contracting officer Dolores Torrez to review a certain file with regard to CIT's contracting efforts. Ms. Torrez is a 638 contracting officer but had never been assigned the applications previously. Ms. Torrez is assigned to the self-determination branch of the BIA Regional Office in charge of higher education. Ms. Torrez was not given all documents relevant to this review, namely, the May 6, 2003, December 4, 2003, and March 29, 2004, letters from CIT or its attorneys to the Regional Office.

28.   The Regional Office has a separate branch for self-determination contracting. The grants officer, Mr. Jeff Sena, is not part of that branch and did not send communications from CIT regarding its desire to obtain contract support costs under P.L. 93-638 to either the Regional Director or the self-determination contracting branch. Regional Director Chicharello also failed to pass on the December 9, 2003, applications to the self-determination contracting branch, causing delay and eventual mishandling of these applications.

29.    It is the practice of the self-determination contracting branch of the Regional Office to send a team to the headquarters of any applicant for a P.L. 93-638 contract to review the application, informally advise as to its deficiencies, and assist the applicant to correct any deficiencies within a reasonable period to avoid declination.  This practice was not followed by the Regional Office with regard to CIT's applications of December 9, 2003.

### FINDINGS OF FACT AS TO THE FY 2005 APPLICATION

30.    All findings and conclusions in Paragraphs 1 through 29 are incorporated by reference.

31.    On September 27, 2004, Plaintiff Crownpoint Institute of Technology ("CIT") submitted an application to the Regional Director Eloise Chicharello of the Navajo Regional Office of the Bureau of Indian Affairs, U.S. Department of the Interior, for a P.L. 93-638 contract to provide adult vocational education to Navajo Indians with funds anticipated to be appropriated to the Bureau of Indian Affairs in the amount of $1,700,000, plus appropriate contract support costs, for FY 2005 with an expenditure period including FY 2006.  The application was accompanied by a grant agreement for the same monies.  Due to past experience with BIA, the intention was to secure immediate funding via the same grant mechanism used in the past because of the expectation that the contract application would be rejected or delayed as before.

32.    The application complied with 25 C.F.R. 900.8 of the regulations governing the contracting of programs under the Indian Self-Determination Act, 25 U.S.C. 450 *et seq.* Appended to the application were resolutions, ACN-144-32 (authorizing CIT to participate in all P.L. 93-638 programs)  and CIT's re-charter granted by the Navajo Nation in CJY-68-95 (authorizing it to secure funding from public sources).

33.   The application was received by the Regional Director on September 28, 2004.

34.   On October 12, 2004, the Regional Office sent a notice of deficiencies to CIT which was answered in full by CIT on October 28, 2004. There was no response to CIT's letter.

35.   On November 15, 2004, the Intergovernmental Relations Committee of the Navajo Nation enacted Resolution IGRN-204-04, approving the CIT contract application for FY 2005 monies; that resolution ratifies Resolution ACN-144-32 (1982) which specifically grants authority to CIT to participate fully in P.L. 93-638 programs. Resolution IGRN-204-04 was delivered to Defendants on or about November 17, 2004. Resolution IGRN-204-04 included as Ex. "A" a copy of the application submitted by CIT to the Regional Office on September 27, 2004.

36.   The Regional Office has not questioned the authenticity or effect of IGRN-204-04. On December 13, 2004, CIT received a letter from the Regional Director asking CIT to agree to an extension of 30 days to January 27, 2005, in which to take action to approve or decline CIT's application for a P.L. 93-638 contract using FY 2005 appropriations. On December 21, 2004, CIT agreed to the requested extension.

37.   On December 8, 2004, Congress enacted Public Law 108-447, 118 Stat. 3055 containing an appropriation of $1,955,047,000 for operation of Indian programs by defendant Secretary of the Department of the Interior. P.L. 108-447 contained an add-on appropriation of $1,725,000 (which takes account of across-the-board rescissions) for operation of CIT adult vocational training programs. The BIA had a budget surplus on October 1, 2004, in the amount of $321,000,000 as shown on Appendix, page 634, to the President's Budget for Fiscal Year 2006.

38.    CIT received no further communication from the Regional Office or Regional Director

       until March 4, 2005, when it received a letter declining the contract application. The

       declination letter from the Regional Office was dated February 25, 2005, or 27 days after

       the extended deadline for sending such a notice. The declination letter was postmarked

       February 28, 2005, or 30 days after the extended deadline for sending such a notice.

39.    The declination notice did not contain specific findings of fact that clearly demonstrate

       that a declination issue existed and was not supported by reference to controlling legal

       authority that such an issue existed, as required by 25 U.S.C. § 450f(a)(2). The notice

       also failed to offer technical assistance to cure any declination issue, per 25 C.F.R.

       900.30.

40.    Since FY 2001 and including its 2005 Budget Request the Bureau of Indian Affairs has

       listed CIT under its Budget Request for "Special Programs and Pooled Overhead".

41.    Although the BIA did not request funding for CIT in FY 2000, 2002, 2003, 2004 or 2005,

       The BIA listing of CIT under Special Programs and Pooled Overhead in its Budget

       Justifications recognized that CIT is an authorized program of the BIA under the Snyder

       Act, 25 U.S.C. 13, and the Indian Adult Vocational Training Act, 25 U.S.C. 309.

42.    CIT has not received any of the funds appropriated for it by Congress in P.L. 108-477.

### SPECIFIC FINDINGS AS TO TRIBAL RESOLUTIONS

43.    In December 2004, Navajo Nation Advisory Committee Resolution ACN-144-32,

       accompanying the FY 2003, FY 2004, and FY 2005 contract applications was still in

       effect.

44.     CIT's charter, issued by Navajo Council Resolution CJY-68-95, was identified in CIT's

        contract applications and was interpreted by the Education Committee to give CIT the

        authority to contract with the BIA under P.L. 93-638 without further approval by the

        Education Committee so long as CIT kept the Education Committee informed of its

        contracting activities.

45.     The Intergovernmental Relations Committee confirmed CIT's contracting authority in

        Resolutions IGRN-203-04 and IGRN-204-04 which specifically approved the CIT

        applications at issue in this case.

46.     IGRJN-95-02 (June 1995) recognized and endorsed CIT's authority to contract under P.L.

        93-638 with the BIA.  This resolution was submitted to the BIA's Washington, DC

        headquarters prior to the submittal of the FY 2003 and FY 2004 applications.

47.     CIT's charter, re-issued in tribal council resolution CJY-68-95 (July 1995) and

        accompanying the three applications at issue in this case,  independently and separately

        conferred contracting authority under P.L. 93-638 to CIT and was so viewed by the

        relevant tribal committees.

48.     IGRJN-133-95 (June 1995) dealing with Tribal Priority Applications and directing that

        Navajo adult vocational training monies be combined with higher education scholarships

        was rescinded by IGRD-213-95. In any event, neither resolution affected the monies

        Congress appropriated through Special Programs and Pooled Overhead to CIT, since

        those monies are not part of TPA.

49.     The Navajo Nation fully and unwaveringly supported and supports  CIT's efforts to

        contract under P.L. 93-638 with the Bureau of Indian Affairs and supports its efforts to

secure contract support costs in addition to direct program funding as appropriated for CIT by Congress.

CONCLUSIONS OF LAW

1.   The Court has personal and subject matter jurisdiction over this action and defendants pursuant to 25 U.S.C. 450m-1(a). Venue is properly laid in New Mexico.

2.   Exhaustion of remedies is not required. 25 U.S.C. 450f(b)(3), 450m-1(a). The United States has consented for its officers to be sued in this action. 25 U.S.C. 450m-1(a).

3.   The adult vocational training activities conducted by CIT are programs which defendants are authorized to administer for the benefit of Indians under the Act of November 21, 1921, 42 Stat. 208, 25 U.S.C. 13, commonly known as the Snyder Act, and other Acts subsequent thereto, including section 309 of title 25 United States Code, the Indian Adult Vocational Training Act and are thus contractable under 25 U.S.C. § 450f(a)(1)(B) and (E) of the Indian Self-Determination and Education Assistance Act.

4.   The Act mandates that funds provided to the Secretary by Congress for operation of Indian programs be contracted to Indian tribes and sanctioned tribal organizations upon resolution of the tribal government. The Act requires that two categories of monies relevant to the claims in this case be added to each such contract: direct program costs, i.e., the amounts the Secretary would have spent for her own operation of the program; and contract support costs, i.e., additional costs which the contractor must incur to maintain the program level. The latter are commonly called administrative costs or overhead costs.

5.     Under applicable regulations authorized by 25 U.S.C. 450k in Part 900 of 25 Code of
Federal Regulations the Secretary is directed, *inter alia*:

     (a)    Within two days of receipt of a contract application issue a notice of
           receipt.  25 C.F.R. 900.15(a).

     (b)    Within 15 days of receipt issue a notice of deficiencies.  25 C.F.R.
           900.15(b).

     (c)    Review the application to determine whether there are declination issues
           under the Act. 25 C.F.R. 900.15(c).

     (d)    If not declined within 90 days of receipt or any agreed extension the
           application is deemed approved and the Secretary "shall award the contract
           . . . and add to the contract the full amount of funds" pursuant to section
           106(a) of the Act [25 U.S.C. 450j-1(a)]."  25 C.F.R. 900.18.

     (e)    Provide requested technical assistance.  25 C.F.R. 900.28.

6.     The Secretary has the burden of proof, 25 C.F.R. 900.163 and P.L. 93-638 § 102(e)(1), to
support a declination of a P.L. 93-638 contract application.  The Secretary did not meet
her burden of proof to justify declining the FY 2003, FY 2004, or FY 2005 contract
applications by CIT.

7.     Programs, functions, services or activities listed in the Special Program and Pooled
Overhead category of the BIA's annual Budget Justifications are contractable programs
within the meaning of 25 U.S.C. § 450f(a) of the Indian Self-Determination And
Education Assistance Act.  CIT is listed in that category in every year since FY 2001and

is therefore entitled to contract for any monies awarded or intended to be awarded via a federal assistance grant to it.

8.     There is no legal requirement that a program be in existence and operated by the Bureau of Indian Affairs prior to its being contracted to an authorized tribal organization.

9.     The signing of grants under duress for FY 2003 and FY 2004 does not bar CIT from applying to convert those grants to P.L. 93-638 contracts and thereby become entitled to contract support costs.

10.     By appropriate resolutions the Navajo Nation has authorized CIT to contract under P.L. 93-638 for FY 2003 and FY 2004 monies and to convert its present grants to contracts so as to qualify for contract support costs.

11.     The Secretary has a ministerial duty to approve a contract application for a P.L. 93-638 contract submitted by a recognized Indian tribe or tribal organization on which she has not acted within 90 days or any agreed extension of receipt upon a non-fraudulent application.

12.     By failing to decline the 2005 contract application within the agreed 120 days of submission, the CIT application is deemed approved pursuant to 25 C.F.R. 900.18, as of January 27, 2005.

13.     CIT's applications for P.L. 93-638 contracts for FY 2003 and FY 2004 are deemed approved as of March 9, 2004 (90 days after December 9, 2003) and the Secretary has a ministerial duty to award and fund the contract as requested in the applications.

14. CIT's applications met the legal requirements for award of P.L. 93-638 contracts for FY 2003, FY 2004, and FY 2005 regardless whether the defendants acted within time deadlines set forth in their regulations.

15. CIT is entitled to an order directing the Secretary to convert CIT's existing grants for FY 2003 and FY 2004 from grants to P.L. 93-638 contracts and to award a contract for the FY 2005 monies.

16. CIT is entitled to additional funding for contract support costs for FY 2003, FY 2004, and FY 2005 in amounts to be determined.

17. The Secretary is legally obligated to award the contracts in the amount requested regardless whether she has expended the monies for other purposes. *Cherokee v. Leavitt*, 543 U.S. ___, 125 S. Ct. 1172  (March 1, 2005).

18. All three CIT contract applications were supported and authorized by the Navajo Nation, a federally recognized Indian tribe.

19. The FY 2005 appropriation Act P.L. 108-477 for Special Programs and Pooled Overhead *covers direct program costs for CIT in the amount of $1,725,000. In addition, CIT is* entitled to a pro rata amount for contract support costs in an amount to be determined.

20. The lump sum appropriation in P.L. 108-477 was legally available to fund the CIT contract deemed approved on January 27, 2005.

Respectfully submitted this 14th day of April, 2005.

DANIEL H. MACMEEKIN
ATTORNEY AT LAW
Daniel H. MacMeekin
1776 Massachusetts Avenue, NW
Suite 801
Washington, DC 20036
Telephone: (202) 223-1717
Fax: (202) 223-1549

M.P. GROSS & ASSOCIATES, P.C.

By _____
    Michael P. Gross
460 St. Michael's Drive, Suite 401
Santa Fe, New Mexico 87505
Telephone: (505) 995-8066
Fax: (505) 989-1096

GALLEGOS LAW FIRM, P.C.
J.E. Gallegos
460 St. Michael's Drive, Building 300
Santa Fe, New Mexico 87505
Telephone: (505) 983-6686
Fax: (505) 986-1367

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on I have caused a true and correct copy of the foregoing proposed Findings of Fact and Conclusions of Law to be served by facsimile to the following counsel of record at (505) 346-7296:

Jan Elizabeth Mitchell
Assistant U.S. Attorney
Chief, Civil Division
District of New Mexico
Albuquerque, New Mexico

and by depositing the same in the United States mail, first class postage prepaid, to the following counsel of record:

James J. Gilligan
Tamara Ulrich
U.S. Department of Justice
Civil Divisions, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

Elizabeth J. Kelhoffer
U.S. Department of Justice
20 Massachusetts Avenue, NW
Room 6132
Washington, DC 20530

_____
MICHAEL P. GROSS